IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| SONJA L. ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-CV-273 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 13] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Citing depression, panic attacks, diabetes, "ministrokes," heart disease, high cholesterol, arthritis, migraines, and impaired concentration, plaintiff filed the present SSI application in July 2003. [Tr. 66, 77]. She alleged a disability onset date of May 16, 2003. [Tr. 66]. The application was denied initially and on reconsideration. Plaintiff then

requested a hearing, which took place before an Administrative Law Judge ("ALJ") in June 2005.

In February 2006, the ALJ issued a decision denying benefits. Therein, he found that plaintiff suffers from "obesity, diabetes, depressive disorder, anxiety disorder, and personality disorder," which were deemed "severe" impairments but not equivalent, singularly or in concert, to any impairment listed by the Commissioner. [Tr. 25]. The ALJ termed plaintiff's credibility "fair." [Tr. 26]. He determined that plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work limited by only occasional climbing, crawling, and overhead reaching with the right arm, subject to moderate limitation in the abilities to interact appropriately with the general public and respond appropriately to workplace changes. [Tr. 27]. Relying on vocational expert testimony, the ALJ concluded that a significant number of jobs exist in the national economy matching plaintiff's RFC. [Tr. 28]. Plaintiff was accordingly ruled ineligible for SSI benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on October 2, 2007, notwithstanding the submission of approximately seventy pages of additional medical records. [Tr. 4-5, 8, 371-441]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

2

Case 2:07-cv-00273   Document 16   Filed 01/05/09   Page 2 of 20   PageID #: 74

On appeal, plaintiff does not challenge the ALJ's conclusions relating to her *physical* health. Any such issue has thus been waived. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006). Evidence pertaining to plaintiff's physical allegations accordingly will not be discussed herein except where relevant to the issue of credibility.

## II.

### *Background*

Plaintiff has a high school diploma. [Tr. 83]. Her past relevant work is as a computer technician and a fast food cook. [Tr. 69].

Plaintiff in part states that she cannot work due to impaired concentration. [Tr. 77, 240]. However, her mother reports that plaintiff can pay attention with "no problem" and can follow written instructions "very well." [Tr. 99].

Plaintiff claims that she stopped working due to complications from uncontrolled diabetes. [Tr. 356]. She repeatedly purports to be unable to afford medication for her diabetes and other conditions necessary "to save my life." [Tr. 82, 104, 107-08, 120, 308, 310, 327-28, 336, 339]. Plaintiff's mother contends, "She is sick because of not having the right medicines . . . ." [Tr. 94]. Plaintiff alleges severe physical limitations "all from the complications of diabetes." [Tr. 109]. She further states,

> Diabetes has changed my life like the flick of a switch. And it is causing so many other things to go wrong . . . .
>
> . . .

3

> It has definetatly [sic] changed my life forever along with all the little extras, the side effects from diabetes. My life is so restricted . . . . If only they had a cure . . . but they don't only meds I can't afford to get. It has changed my life forever . . . .

[Tr. 110-11].

The record indicates that plaintiff does not monitor her blood sugar even when provided with free supplies, does not provide requested information to her physicians, and has been a "no show" for diabetes management and weight loss education appointments. [Tr. 308, 311-12]. In addition, despite claiming to be unable to afford even $12.00 prescriptions [Tr. 308], plaintiff has been observed in "relatively new clothes and jewelry" [Tr. 308] and has admittedly smoked a pack of cigarettes per day for at least twenty years [Tr. 209, 241, 264, 308, 330, 372-76, 409, 428, 431] even though she is purportedly unable to perform housework in part because she "get[s] outta breath so bad . . . and my heart about explodes." [Tr. 107-08].

Plaintiff has consistently told the Commissioner and medical professionals that she does not use street drugs. [Tr. 241, 264, 330, 339, 350, 353, 375-76, 409]. However, she tested positive for marijuana in the only drug screen contained in the administrative record. [Tr. 377].

4

III.

*Medical Evidence*

A. Evidence Presented to the ALJ

Plaintiff was briefly hospitalized in 1995 with complaints of depression and suicidal ideation related to her first husband's infidelity. [Tr. 129, 191]. Plaintiff claims to have suffered another "episode" in 2001 due to her second husband's infidelity. [Tr. 339].

Child psychiatrist Wayne Edwards performed a consultative examination in September 2003. [Tr. 341]. Plaintiff stated that she "need[ed] help" due to physical, financial, and marital problems. [Tr. 239]. She reported hopelessness and impaired concentration. [Tr. 240]. Plaintiff had been taking the antidepressant Zoloft for one week, but had not been in counseling during the past two years due to a purported lack of funds. [Tr. 241, 336, 339]. Dr. Edwards described plaintiff as appearing coherent and undistracted, although she had "woke[n] up in a bad mood today." [Tr. 242]. Noting again that plaintiff was currently not receiving mental health counseling, Dr. Edwards reached the following nebulous conclusions.

> The patient states that the medication is not helping any at this time. It is noted to be of short duration of treatment. No progress is noted based upon presenting symptoms. The patient does appear to be compliant periodically with her outpatient psychiatric treatment. Probable duration of impairment is short to long term. . . . The patient appeared to be able to perform simple, work-related tasks. She was able to ask simple questions and ask for assistance. She had appropriate understanding and remembering capabilities in order to follow one to two-step instructions.

5

> The patient's concentration and persistence were congruent with the patient's level of education. . . . She demonstrated an ability to adapt to changes in a day-to-day work setting without significant impairment. At this time, the patient appeared to have difficulties working eight hours a day, five days a week without psychiatric symptoms based upon her current level of presentation and overall treatment. . . . She was able to conduct herself appropriately during this interview session other than crying spells.
>
> . . . The recommendations are that the patient continue to seek outpatient mental health counseling to help deal with life stressors and develop coping skills . . . as well as seeing a psychiatrist for appropriate medication management to help alleviate symptoms. . . .

[Tr. 244-45].

Plaintiff reentered sporadic counseling shortly after Dr. Edwards's consultative examination. Plaintiff reported panic attacks and insomnia secondary to her "husband asking her to leave." [Tr. 329, 333]. Psychiatrist William Matthew described her as very depressed and anxious, but nonetheless alert and attentive with intact judgment, insight, memory, and reliability. [Tr. 331].

Nonexamining Dr. Stephen Scher completed a Mental RFC Assessment in October 2003. Dr. Scher predicted only two moderate limitations: the ability to interact appropriately with the general public; and the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Tr. 260].

Also in October 2003, Dr. Bobby Kidd performed a physical consultative examination. Plaintiff complained of pain in all joints when asked to demonstrate range of motion, to the point of exclaiming "Oh God" when asked to move. [Tr. 267]. Dr. Kidd,

6

however, observed no redness, swelling, or crepitus in any joint. [Tr. 267]. He predicted no physical limitations whatsoever. [Tr. 267].

Nonexamining Dr. Ilze Sillers completed a Mental RFC Assessment in January 2004. Dr. Sillers predicted moderate limitation in only two areas: interacting appropriately with the general public; and responding appropriately to changes in the work setting. [Tr. 302-03]. Dr. Sillers wrote that Dr. Scher's assessment "is affirmed," although the two reviewers's predictions differed slightly. [Tr. 304]. Both Dr. Sillers and Dr. Scher declined to fully adopt Dr. Edwards's opinion. [Tr. 261, 304].

In February 2004, Dr. Radhika Cherukuri described severe depression but deemed plaintiff's "[t]hought content and process normal." [Tr. 307]. Plaintiff was not taking any medication, and Dr. Cherukuri prescribed Zoloft. [Tr. 307]. Dr. Cherukuri opined that plaintiff "is temporarily disabled and can return to work in 3 months in view of severe depression recommended psychiatric evaluation [sic]." [Tr. 307].

At a March 2004 counseling appointment, plaintiff reported increased depression and anxiety because of "argu[ing] all the time" with her second husband, who was newly unemployed and again having an affair. [Tr. 326]. Plaintiff had been "doing all right with" antidepressant and antianxiety medications until purportedly losing them in a house fire the previous month. [Tr. 324].

After a hiatus of more than one year, plaintiff again returned to counseling in July 2005. [Tr. 352, 356]. Plaintiff reported depression, insomnia, "panic attacks," and

7

flashbacks of purported childhood abuse. [Tr. 352]. She further stated that prior use of Xanax and Prozac "helped her quite a bit." [Tr. 353]. Nurse Kathleen Walker and Dr. James Turnbull provided trial prescriptions of those drugs. [Tr. 354].[1]

On August 8, 2005, plaintiff reported that the medications were "working well for her." [Tr. 370]. Nurse Walker described plaintiff's mental status as "stable" with "no evidence of thought disorder." [Tr. 369]. On August 19, 2005, plaintiff was "very upset" because her current husband had allegedly been committed due to "suicidal thoughts." [Tr. 368]. Plaintiff again expressed uncertainty as to whether she could afford her medication. [Tr. 368].

B. Evidence Submitted to the Appeals Council

Plaintiff appeared at the Church Hill Free Medical Clinic on January 25, 2005. She reported that she had been without all medications since September 2004. [Tr. 383].

Plaintiff returned to Nurse Walker in June 2006. Plaintiff was described as "tearful and dysphoric" due to her daughter's postpartum depression. [Tr. 395]. Nurse Walker observed that plaintiff was "making very appropriate decisions" with good insight and judgment. [Tr. 395]. Plaintiff "continue[d] to report that her current psychotropic medications continue to be effective as previously prescribed despite the significant psychosocial stressors." [Tr. 395].

---

[1] At her administrative hearing, plaintiff testified that she had "pretty consistently" received mental health counseling since 1991 and that medications do not help her. [Tr. 456-57]. The court is compelled to note that both of those sworn assertions directly conflict with the evidentiary record.

8

At her next visit with Nurse Walker in October 2006, plaintiff's mental status was stable and she "report[ed] that she is doing relatively well . . . . She state[d] that her previous psychotropic medications continue to be effective . . . ." [Tr. 392]. Plaintiff was a "no-show" for her next scheduled appointment [Tr. 393] and was eventually discharged due to noncompliance. [Tr. 397].

Plaintiff was treated by Centerpointe Medical Clinic from August 2006 through April 2007. She continued to claim that she was unable to afford necessary care and medication, yet she continued to smoke. [Tr. 372-76].

On August 30 and October 30, 2006, plaintiff told the Centerpointe staff that she uses no street drugs. [Tr. 375-76]. The staff wanted to "screen for illicit substances" in September 2006 but for some reason did not do so until April 30, 2007. [Tr. 377, 382]. On that date, plaintiff tested positive for marijuana. [Tr. 377].

Upon referral from plaintiff's attorney, psychiatrist Wayne Lanthorn generated a psychological report in August 2007. [Tr. 406]. Plaintiff told Dr. Lanthorn that she uses no illegal drugs. [Tr. 409]. Dr. Lanthorn's evaluation was based on an interview with plaintiff and administration of WAIS-III, PAI, and P/3 testing. [Tr. 406].[2] Dr. Lanthorn

---

[2] Dr. Lanthorn's P/3 testing has been the subject of judicial criticism. *See, e.g., Brown v. Barnhart*, No. 1:06cv00041, 2007 WL 120831, at *7 (W.D. Va. Jan. 11, 2007) (Substantial evidence supported the rejection of Dr. Lanthorn's P/3-based assessment because it was "not supported by Lanthorn's own clinical findings[.]"); *Fields v. Barnhart*, No. 2:05CV00015, 2005 WL 2385620, at *9 (W.D. Va. Sept. 22, 2005) (Substantial evidence supported the rejection of Dr. Lanthorn's testing and findings, which were "inconsistent with the evidence of record as a whole."); *Boyd v. Barnhart*, No. Civ.A.1:04 CV 00078, 2005 WL 555584, at *11 (W.D. Va. Mar. 9, 2005) (same); *see*
(continued...)

9

concluded that plaintiff "is incapable of sustaining a 40-hour workweek at a competitive work site." [Tr. 416]. He further opined that she has no useful ability to function in nine vocational activities. [Tr. 417-18].

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

An individual is eligible for SSI on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[2](...continued)
*also Williams v. Comm'r of Soc. Sec. Admin.*, 39 F. App'x 276, 277-78 (6th Cir. June 25, 2002) ("The ALJ rejected the opinion of Dr. Lanthorn because it was not supported by the medical evidence in the record. . . . [W]e affirm . . . .").

10

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

## V.

### *Vocational Evidence*

Melissa Glannon testified as a vocational expert ("VE") at the administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's age, education, and work experience who would be capable of a range of medium work "moderately limited in interacting appropriately with the general public and responding appropriately to changes in the work setting." [Tr. 462].

Ms. Glannon testified that the hypothetical worker would be unable to perform plaintiff's past relevant work. [Tr. 462]. In the alternative, Ms. Glannon identified a significant number of jobs existing in the regional and national economies that the hypothetical claimant could perform. [Tr. 462-63]. Conversely, if plaintiff's subjective complaints were fully credited, the VE testified that all employment would be precluded. [Tr. 465]. Plaintiff's counsel also attempted to question Ms. Glannon regarding Dr. Edwards's ambiguous consultative assessment but eventually abandoned that issue as illustrated by the following exchange:

VE: . . . in reviewing that [Dr. Edwards's opinion] it does seem to be somewhat incongruent.

ALJ: Right.

VE: And it basically would be a matter of interpretation.

ALJ: Yeah, because some – I mean, it's like he's – on the one hand he's saying she can do this, on the other hand she can't . . . .

>     . . .
>
> ATTY        I guess if this one sentence were looked at in isolation, *which we can't do in fairness*, "At this time the patient appeared to have difficulties working eight hours a day five days a week, no psychiatric symptoms based upon her current level of presentation and overall treatment." In isolation that would be probably disabling, but in total we don't know; is that what we're saying?
>
> VE:         Right. I mean, to me that indicates that she has some degree . . .
>
> ATTY:       Yeah.
>
> VE:         – of psychological symptoms present. Now, whether or not that degree, you know, translates to what I can't say.

[TR. 464-65] (emphasis added).

## VI.

*Analysis*

The following issues can be discerned from plaintiff's motion and brief:

1. The ALJ insufficiently explained his rejection of Dr. Edwards's opinion.

2. The ALJ insufficiently explained his rejection of Dr. Scher's opinion.

3. Other evidence not available to reviewing Drs. Scher and Sillers "clearly supports and demonstrates Plaintiff lacks the ability to meet the basic mental demands to successfully and consistently engage in substantial gainful activity."

4. Evidence first submitted to the Appeals Council warrants remand under sentence six of 42 U.S.C. § 405(g).

The court will address these issues in turn.

## A. Dr. Edwards

Consulting child psychiatrist Wayne Edwards examined plaintiff in September 2003. Plaintiff reported impaired concentration but, in Dr. Edwards's view, appeared coherent and undistracted. [Tr. 240, 242]. Plaintiff had "woke[n] up in a bad mood," had not been in counseling for two years due to an alleged lack of funds, and had been taking antidepressant medication for only one week. [Tr. 241-42].

Dr. Edwards ambiguously predicted that the probable duration of any impairment would be "short to long term." [Tr. 244]. Again noting that plaintiff was not in counseling and had only been on medication for one week, Dr. Edwards opined in material part, "At this time, the patient appeared to have difficulties working eight hours a day, five days a week without psychiatric symptoms based upon her current level of presentation and overall treatment." [Tr. 244]. Plaintiff now contends that the ALJ "failed to even mention this opinion in his decision, much less explain his apparent rejection of it as required." [Doc. 11, p. 12].

The court first notes that Dr. Edwards's report, viewed as a whole, is of minimal value. The imprecise prediction that plaintiff would be impaired "short to long term" does not help plaintiff meet her statutory burden of proving an impairment that has lasted, or is expected to last, for at least one year. Further, the assessment was restricted to plaintiff's "current level of presentation and overall treatment," which was "in a bad mood" and in a virtually untreated state.

14

Moreover, while it is true that the ALJ did not mention the above-cited language in his written decision, the court finds no error because the issue had already been addressed at the administrative hearing. The ALJ and the VE agreed that a precise assessment could not be extracted from Dr. Edwards's report because the report was so "incongruent." [Tr. 464-65]. More importantly, plaintiff's own attorney acknowledged at the administrative hearing, "I guess if [the above-cited] sentence were looked at in isolation, which we can't do in fairness . . . . In isolation that would be probably disabling, but in total we don't know . . . ." [Tr. 464-65]. Therefore, not only did the ALJ adequately explain his rejection of Dr. Edwards's opinion at the administrative hearing, but plaintiff's own attorney expressly waived the issue. It thus is not surprising that the ALJ did not further address Dr. Edwards's opinion in his written decision. The court finds no error.

## B. Dr. Scher

Plaintiff next argues that the ALJ erred by adopting the Mental RFC Assessment of nonexamining Dr. Sillers without addressing the slightly differing Mental RFC Assessment of nonexamining Dr. Scher. While the two assessments are substantially identical, Dr. Scher predicted a moderate limitation in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," whereas Dr. Sillers predicted no significant limitation in those activities.

To the extent that the ALJ erred in not expressly addressing Dr. Scher's opinion, the court finds any error to be harmless. It is evident that Dr. Scher's "moderate" prediction is based on the report of Dr. Edwards. [Tr. 261]. As discussed above, the ALJ adequately explained his rejection of Dr. Edwards's opinion on this very issue. [Tr. 464-65]. Remand is therefore not warranted. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result.").

## C. Other Evidence Before the ALJ

Plaintiff next cites the counseling records on file before the ALJ, arguing that "[t]he evidence outlined above clearly supports and demonstrates Plaintiff lacks the ability to meet the basic mental demands to successfully and consistently engage in substantial gainful activity." [Doc. 11, p. 14-16]. Plaintiff does not, however, specify in what way the records would require RFC conclusions more restrictive than those found by the ALJ. Therefore, "[t]his challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal . . . ." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006).

Plaintiff's counseling records reflect her subjective complaints including depression, insomnia, "panic attacks," and flashbacks to purported childhood abuse. [Tr. 307, 352]. As noted by the ALJ, plaintiff's complaints appear closely related to situational

16

stressors with her marriages. [Tr. 26, 326, 368]. The counseling records include assessments of stability and normal thought process. [Tr. 307, 369].

The counseling records also reveal plaintiff's self-reports that she does "well" with, does "all right with," and is "helped quite a bit by" antidepressant and antianxiety medications. [Tr. 324, 353, 370]. To the extent that Dr. Cherukuri opined that plaintiff is disabled, that was a temporary assessment in light of an unmedicated and uncounseled state. [Tr. 307]. Even then, Dr. Cherukuri opined that plaintiff could "return to work in 3 months." [Tr. 307].

The counseling records also reflect plaintiff's repeated assertion that she is unable to afford her necessary medications. [Tr. 368]. Juxtaposed against her continued twenty-year practice of smoking as much as one pack of cigarettes per day, this repeated assertion provides substantial evidence to support the conclusion that plaintiff's subjective complaints are suspect. Plaintiff's continued smoking also impacts her claim that she is unable to work because she "get[s] outta breath so bad." [Tr. 108]. These facts support the ALJ's generous conclusion that the credibility of plaintiff's subjective complaints is no more than "fair." [Tr. 26].

In sum, plaintiff's counseling records provide substantial evidentiary support for the ALJ's RFC conclusions. To the extent that plaintiff would argue otherwise, her minimal briefing renders the issue waived. *Hollon*, 447 F.3d at 490.

17

## D. Appeals Council Evidence

Lastly, plaintiff cites Dr. Lanthorn's conclusions as "further support[ing] the existence of disabling mental impairments." [Doc. 11, p. 16]. As noted above, Dr. Lanthorn's consultative report was among the evidence first submitted to the Appeals Council in this case. Dr. Lanthorn concluded that plaintiff "is incapable of sustaining a 40-hour workweek at a competitive work site," further opining that she has no useful ability to function in nine vocational activities. [Tr. 416-18].

A district court can remand for ALJ consideration of Appeals Council evidence, but only if the claimant satisfies each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). Sentence six mandates that, before a claim will be remanded for consideration of additional evidence: (1) there must be new evidence presented; (2) the evidence must be material; and (3) there must be good cause for the failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof. *Id*.

Plaintiff has failed to meet her burden of demonstrating that Dr. Lanthorn's report is "material." In addressing that requirement, plaintiff merely recites the materiality standard but offers no meaningful analysis. Again, the court deems unbriefed issues waived. *Hollon*, 447 F.3d at 490; *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004).

Further, Dr. Lanthorn's opinion is not material because it does not address plaintiff's capabilities during the relevant time period, which is prior to the date of the ALJ's

18

decision. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). To the extent that Dr. Lanthorn suggests a worsening of plaintiff's emotional health, under sentence six "[e]vidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began." *Sizemore*, 865 F.2d at 712. If in fact plaintiff's condition has deteriorated, the appropriate course of action would be to file a new claim for benefits relative to the date that she can meet her burden of proof. *Id.*

The remaining Appeals Council evidence also does not satisfy sentence six's materiality requirement. To show materiality, a claimant must demonstrate a "reasonable probability" that the ALJ would have reached a different decision if presented with the new evidence. *Sizemore,* 865 F.2d at 711. Cumulative evidence is not "material." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

The remaining late-submitted evidence contains treatment provider observations of stability, "doing relatively well," appropriate decision-making, good insight, and good judgment. [Tr. 392, 395]. Plaintiff continued to report that psychotropic medications are effective [Tr. 392, 395], yet she continued to offer the dubious excuse that she is unable to afford medication while still able to afford to smoke. [Tr. 372-76, 409, 428, 431]. Plaintiff continued to report distress secondary to family stressors. [Tr. 395].

On August 30 and October 30, 2006, plaintiff told the Centerpointe staff that she uses no street drugs [Tr. 375-76], an allegation that she repeated to Dr. Lanthorn and to

19

numerous providers whose records were before the ALJ. [Tr. 241, 264, 330, 339, 350, 353, 409]. The Centerpointe staff "screen[ed] for illicit substances" on April 30, 2007. [Tr. 377, 382]. That testing, which contains the only drug screen results of record, show that plaintiff tested positive for marijuana. [Tr. 377]. It is likely that the ALJ would downgrade his previous assessment of "fair" credibility in light of the positive drug screen.

Plaintiff has neither addressed nor met her burden of showing a "reasonable probability" that her late-submitted (and largely cumulative) documentation would cause the ALJ to change his mind. Again, cumulative evidence is not "material," *Young*, 925 F.2d at 149, and unbriefed issues are waived. *Hollon*, 447 F.3d at 490; *Cole*, 359 F.3d at 428 n.13.

## VII.

### *Conclusion*

For the reasons provided herein, the final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

20